**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM AGUILAR MEJIA )<br>A# - 074-312-010 )<br>   )<br>   Petitioner, )<br>   )<br>   vs. )<br>   )<br>GLENN TRIVELINE, Field Office )<br>Director of Immigration and )<br>Customs Enforcement; )<br>MICHAEL MUKASEY, Attorney General; )<br>MICHAEL CHERTOFF, )<br>Secretary of the Department )<br>of Homeland Security; )<br>   )<br>   Respondents, ) | No.<br>FILED: JULY 21, 2008<br>08CV4134<br>JUDGE MANNING<br>MAGISTRATE JUDGE NOLAN<br><br>PH |

<u>EMERGENCY PETITION FOR HABEAS CORPUS</u>
<u>AND STAY OF DEPORTATION</u>

NOW COMES, Petitioner, WILLIAM AGUILAR ("Mr. Aguilar"), by and through his attorneys, Katz Law Office, Ltd., and for his Emergency Petition for Habeas Corpus and Stay of Deportation states as follows:

INTRODUCTION

1.   The Petitioner herein, WILLIAM AGUILAR, ("Mr. Aguilar") a noncitizen domiciled in the United States since 1989, since he was seventeen (17) years old is currently being held in detention by the Department of Homeland Security, without bond. He has been held in detention without bond since June 30, 2008. His deportation is imminent as Immigration and Customs Enforcement ("ICE") has stated that the only reason that he is not deported right away is because the "judge is on vacation." (*See* Exhibit A, Affidavit of Alissa Eugeni.)

2.   Petitioner was taken into custody when he was walking towards the Howard "L" station with two other men. The three were accused of drinking alcohol in public, which they denied doing, and the police asked to see their IDs. Petitioner's ID was believed to be invalid, and he was detained; the two other men were given their IDs and released. Once in custody, Petitioner was told that there was a prior deportation order against him and that, as a result, he would not be given a hearing before an immigration judge. He was further told that a 1995 heroin possession charge was also outstanding against him.

3. Mr. Aguilar is an Acquired Immune Deficiency Syndrome ("AIDS") patient and has a brain disorder, Progressive Multifocal Leukoencephalopathy ("PML"), a rare condition that strikes some AIDS patients, which affects Mr. Aguilar's memory. He also has cranial nerve and facial nerve palsy. William Aguilar is on antidepressant and antiretroviral medication. He has to take antidepressants in order to prevent depression which twice caused him to attempt suicide, and thereafter caused him to have a powerful stroke. His medication is essential for controlling his AIDS as well as his mental ability. Without these medications, Mr. Aguilar is in serious danger of further mental disability, retardation, or even death. Furthermore, without his antidepressant medication, Mr. Aguilar is in danger of renewed depression and possible suicide.

4. Mr. Aguilar has no memory of being in court for any previous deportation hearing. He also denies having ever been involved with heroin. Prior to being taken into custody, he had been a member of Alexian Brothers Bonaventure House ("Alexian") since February 14, 2006, where breathalyzer tests and urine tests to check for alcohol or drug consumption were routinely performed, and Mr. Aguilar *never* tested positive for either substance.

5. If this petition to stay the deportation is denied, Mr. Aguilar would be deported without having a chance at a hearing for asylum or any form of relief from removal. His removal from the United States could be nothing less than a death sentence for him given his physical and mental condition.

PARTIES

6. Mr. Aguilar was born in Colombia but at an early age he moved to Guatemala where he lived with his mother, step-father, and two half-brothers named Howard and Connor. He came to the United States at age seventeen (17) in 1989 after running away from a home where he witnessed his mother being abused by his step-father. He has lived in the United States ever since. On January 1, 2005, he was diagnosed with AIDS after having sexual relations with someone who was HIV positive. He is being held in detention at the Department of Homeland Security at Dodge County Jail in Juneau, Wisconsin. Since living at Alexian, Mr. Aguilar has routinely proved great character and responsibly lived his life in a moral way. He was one of the six (6) people out of thirty-five (35) who qualified for a housing voucher, for which he had to be in good standing with Alexian by attending group meetings, completing chores, and having a good attendance record.

7. Respondent Glenn Triveline is sued in his official capacity as the Field Office Director within the State of Illinois for the Immigration and Customs Enforcement (ICE), an office of the Department of Homeland Security. Respondent Triveline is charged by law with the implementation and enforcement of the immigration laws, and he is the officer who has custody over Petitioner.

8. Defendant Michael Mukasey is sued in his official capacity as the Attorney General of the United States. He has authority over the Board of Immigration Appeals,

and he has authority to direct the Board to hold bond hearings and establish bond conditions.

9.  Defendant Michael Chertoff is sued in his official capacity as the Secretary of the Department of Homeland Security. He is the executive officer who has been given authority to manage and control the Immigration and Customs Enforcement. As such, he is the ultimate legal custodian of the Petitioner.

## JURISDICTION

10. This court has jurisdiction pursuant to 28 U.S.C. §2241 (habeas corpus jurisdiction); 28 U.S.C. §1331 (federal question jurisdiction); and 8 C.F.R. §§1003.2(f), 1003.23(b)(1)(v), 1003.6 (jurisdiction actions for stay of deportation).

11. Venue in the Northern District of Illinois is appropriate under 28 U.S.C. §1391(e)(1) and (2) because the Petitioner resides in this district and because Petitioner is being held in detention under the direction of Illinois' ICE officials.

## NON-APPLICABILITY OF THE REAL ID ACT

12. Congress has decided that federal appellate courts have exclusive jurisdiction to review final orders of removal with the exception of expedited removal cases. INA §242(a)(5); 8 U.S.C.A. §1252(a)(5) (West 2008). This jurisdiction extends to claims involving constitutional issues, questions of law [INA §242(a)(2)(D); 8 U.S.C.A §1252(a)(2)(D) (West 2008)] or cases under the Convention Against Torture. INA §242(a)(4); 8 U.S.C.A. §1252(a)(4) (West 2008). However, the courts of appeal are not permitted to review discretionary determinations. INA §242(a)(2)(B); U.S.C.A. 1252(a)(2)(B) (West 2008). Provisions contained in the REAL ID Act of 2005 eliminated access to habeas jurisdiction over final deportation orders. INA §242(a)(5); 8 U.S.C.A. §1252(a)(5) (West 2008). However, REAL ID does not prohibit district court habeas review to challenges of detention where they are independent of challenges to the final order of removal. See, H.R. Conf. Rep. No. 109-72 at 175.

13. Moreover, the jurisdiction of the U.S. Courts of Appeals under the REAL ID Act prohibits them from considering new evidence, e.g., Petitioner's current health status, his diagnosis of AIDS, depression, etc.

## FACTUAL BACKGROUND

14. Mr. Aguilar is a citizen of Guatemala. He came to the United States in 1989 at the age of seventeen (17).

15. Mr. Aguilar came to the United States after running away from his home after witnessing repeated abuse of his mother at the hands of his step-father. On one occasion when he had attempted to intervene, he was reprimanded by his mother for disobeying

his father.  No longer being able to tolerate the situation, he left for the United States in 1989 and has never since returned to Guatemala.

16.     After coming to the United States, Mr. Aguilar performed odd jobs and gained working knowledge in construction.  He contracted AIDS by engaging in sexual intercourse with someone who was HIV positive.  At around the same time, in 2005, he became clinically depressed and attempted suicide by taking an overdose of wine with a bottle of 800 mg Ibuprofen mixed with alcohol.  He had to be hospitalized immediately as he also suffered a stroke from this overdose.  Again, in September of 2005, he made a second attempt at suicide for which he also had to be treated.  Mr. Aguilar also suffered significant bruises and burns when he was beaten up by several gang members, as he waited at a bus station on his way home from a baptism.  He was forced to drink bleach and suffered severe internal burns.  He had to be hospitalized for ten (10) days for treatment of his burns and bruises.

17.     Mr. Aguilar has allegedly been convicted of possession of heroin in 1995, but he denies and does not recall ever having possessed heroin or any other illegal substance.  Mr. Aguilar was also allegedly ordered to be deported in 1995, but he denies and cannot recall ever being in court for any hearing on the matter.

18.     Since being taken into custody on June 30, 2008, Mr. Aguilar has not received his medication in a timely manner or with any consistency.  When he has received medication, he has sometimes been given the wrong medication.  Despite repeated inquiries by his case worker, Alissa Eugenie, and the faxing of medical reports and prescriptions, this situation has not been remedied.  If Mr. Aguilar fails to receive the appropriate medication to control his AIDS and depression, he will suffer immense setbacks in his physical and mental health.

19.     If his removal is not stayed, Mr. Aguilar will have no opportunity to be heard and will face immediate removal without a hearing to Guatemala, where he will not have access to adequate medical care for the treatment of his conditions, nor to anyone who could help him or take care of him.  He would be ostracized or labeled as being mentally incompetent.  This would surely exacerbate his current depression and brain disorder, which could amount to a death sentence for him.

20.     Upon the grant of this request, Mr. Aguilar intends to apply for asylum or other relief from removal due to his extreme circumstances.

## IRREPARABLE INJURY

21.     Petitioner is suffering and will continue to suffer irreparable injury because of the government's actions. This injury is compounded with each day that he remains detained.

22.     Further, because he is not being given proper medication at the appropriate times while in custody, he will likely suffer severe setbacks in his physical and mental health as

a result of his continued detention. His years of hard work in maintaining his health and quality of life will be meaningless, and his life could be shortened unnecessarily.

23.     If this petition is not granted, Mr. Aguilar will not be able to make his case for asylum or other relief pursuant to the "material change" exception to the one year bar for asylum cases following the IRAIIRA. Further, Mr. Aguilar may qualify for the "extraordinary circumstance" exception to the one year bar pursuant to INA Section 208.4(a)(5) or any relief for Restriction of Removal. (INA Section 241(a)(5), 241(b)(3); 8 CFR Sections 208.16, 208.31, 241.8(d), 1208.16 1208.31, 1241.8(e)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. Petitioner has exhausted all administrative remedies and no further administrative remedies are available to him.

## RELIEF SOUGHT

The Petitioner respectfully requests the following relief:

(1) that this Court issue a Writ of Habeas Corpus and direct the Respondents to administer the prescribed medication to Petitioner in a timely and regular fashion;

(2) that this Court stay the removal of Petitioner, in order to allow him to receive a fair hearing and a chance to present his case;

(3) for such other relief as may be just and appropriate, including costs, expenses and reasonable attorney fees.

                        Respectfully submitted,


                        By: /s/ Daniel W. Thomann
                            Attorney for Defendants


Katz Law Office, Ltd.
4105 West 26th Street
Chicago, Illinois 60623
PH:   773-321-6651
FAX: 773-321-6708

VERIFICATION

Daniel W. Thomann, being duly sworn upon oath, hereby states: I represent the Petitioner in these habeas corpus proceedings. The Petitioner, William Aguilar Mejia, is currently being held in detention at the Dodge County Detention Facility, and he is not able to appear in my office to sign this Verification. I have reviewed the available record of the removal proceedings, discussed this matter with the Petitioner's, and my staff has discussed the Petitioner's detention status with an officer of the Department of Homeland Security. I verify that the information contained in the foregoing Petition is true and correct to the best of my knowledge and belief.


  /s/ Daniel W. Thomann

Daniel W. Thomann, Esq.


Attorney for William Aguilar Mejia

Exhibit A

### AFFIDAVIT OF ALISSA EUGENI

I, Alissa Eugeni, an adult female over the age of twenty-one years, under oath, attest to the following, all of which is derived from my personal knowledge:

1. My name is Alissa Eugeni, and I am the case worker for Alexian Brothers Bonaventure House, 825 West Wellington Avenue, Chicago, Illinois 60657-5123.
2. I symbolically serve as William Aguilar's "guardian" and speak to Mr. Aguilar on a routine basis over the phone while he is in custody of ICE.
3. On or around July 18, 2008, I spoke to Mr. Aguilar, and Mr. Aguilar told me that he was scared of being deported and was told by an ICE officer that the only reason he is not being deported is because the Judge is on vacation.
4. Furthermore, William Aguilar told me that he received "two blue pills" instead of "a blue and a yellow pill."
5. On Thursday, July 17, 2008, I faxed a list of Mr. Aguilar's medications to ICE along with proof of diagnosis. I also sent the contact information for William Aguilar's doctor.
6. On or about Thursday, July 17, 2008, Mr. Aguilar was not given any medication.
7. Further saith affiant not.

Respectfully Submitted,

_____
Alissa Eugeni

Subscribed and sworn to before me, a notary public in and for the County and State aforesaid, on this _____ day of _____, 2008, by, _____, who is personally known to me to be the same person who executed the foregoing instrument and acknowledges the execution of the same.

_____
Notary Public

My Commission expires: _____, _____.